Louis Kovarik *v.* Borough of East Pittsburgh. Emanuel P. Callas, Mayor, Appellant.

454

Argued November 16, 1984, before Judges CRAIG, BARRY and COLINS, sitting as a panel of three.

*Leo Kostman,* for appellant.

*Ronald P. Koerner, Gatz, Cohen, Segal & Koerner,* for appellee.

OPINION BY JUDGE CRAIG, December 18, 1984:

Emanuel P. Callas, the mayor of the Borough of East Pittsburgh, appeals an order of the Court of Common Pleas of Allegheny County upholding a decision of the borough's civil service commission which reversed the suspension of Police Chief Louis Kovarik.

We must determine[1] whether, as the commission and common pleas court concluded, the mayor's notice of charges against Kovarik was so deficient as to require reversal and entitle the chief to backpay for the ten-day suspension.

Underlying Kovarik's suspension was an incident on March 30, 1982, when the chief allegedly countermanded an order issued by the mayor prohibiting any police officers from "walking the beat" in the borough. The mayor sent a letter to the chief, dated March 31, 1982, which provided as follows:

Chief Louis Kovarik,

You are hereby suspended under the provisions of the borough code of Pennsylvania, section 1190, paragraph (4) disobedience of orders and conduct unbecoming an officer.

Also, under the provisions of the borough code, the mayor has the right to suspend for 10 days, and the borough council members cannot reinstate for that 10 day period but can reinstate for any time exceeding that 10 day period. You do have the right to ask for a civil service hearing. Your suspension will begin April 5, 1982 and will continue for a period of 10 days.

Sincerely,
Emanuel P. Callas
Mayor of East Pittsburgh, Pa.

Chief Kovarik demanded a civil service commission hearing. On May 3, 1982, two days before the scheduled hearing, the mayor personally handed to

---

[1] Our scope of review is limited to a determination of whether the commission violated the appellant's constitutional rights, erred as a matter of law, or made findings of fact not supported by substantial evidence. 2 Pa. C. S. §754(b).

the chief a document entitled "Amendment to complaint dated 3/31/82," which provided:

To Chief Louis Kovarik

Your suspension was directed by me, because you countermanded on March 30, 1982, my order to have Officers Cassidy and Krancic not to walk a beat; that you disobeyed this order and threatened to suspend these officers if they did not walk a beat, contrary to my orders.

Sincerely,
Emanuel P. Callas
Mayor of East Pittsburgh, Pa.

Copy given to Chief Kovarik in person by Mayor Callas on 5/3/82, at approximately 12:30 p.m. at boro building.

Mayor Callas

At the start of the hearing on May 5, 1982, the chief's counsel voiced his objection to the inadequacy of the notice provided on March 31, 1982, and to the untimeliness of the notice provided on May 3, 1982. Counsel's ultimate approach, not to demand a continuance but to proceed with the hearing, did not constitute a waiver of that objection. As this court stated in *Cerceo v. Borough of Darby,* 3 Pa. Commonwealth Ct. 174, 281 A.2d 251 (1971), where a borough had provided its police officers with a similarly inadequate notice of charges:

The fact that appellants, having voiced objections both before the commission and before the court of common pleas, nevertheless went ahead before the agency and the court to argue the case on its merits, is no indication of an implied waiver.

*Id.* at 182, 281 A.2d at 255.

Section 1124 of The Borough Code,[2] 53 P.S. §46124, empowers the mayor to suspend, without pay and for cause, a policman until the next regular meeting of borough council. Section 1190 of the Code, 53 P.S. §46190, lists the causes for suspension, removal and reduction in rank of borough police officers, and requires that: "A written statement of any charges made against any person so employed shall be furnished to such person within five days after the same are filed."

Although the notice of March 31, 1982 imposed a suspension upon Kovarik, it gave no indication of the factual nature of the basis for the charges. Therefore, that notice was procedurally defective because "[s]uch written charges must at least refer generally to the incident(s) that form the factual basis of the charge or no viable answer is possible." *Township of Darby v. McCartney*, 42 Pa. Commonwealth Ct. 530, 534, 401 A.2d 401, 403 (1979).

Chief Kovarik received the notice of May 3, 1982, setting forth the facts underlying the charges against him, before the commission hearing, but well past the five-day requirement of §1190. The commission found that the May 3rd "amendment" did not cure the procedural deficiencies of the March 31 notice. Essentially, the question is whether failure to comply with the five-day requirement of §1190 mandates the commission to reverse the suspension, or permits it to continue the proceeding until the police officer has had sufficient time to consider the factual basis of the charges to prepare a defense. In *Gardner v. Repasky*, 434 Pa. 126, 252 A.2d 704 (1969) (arising under borough code provisions, since repealed but containing language still found in provisions appli-

---

[2] Act of February 1, 1966, P.L. 1656, *as amended*, 53 P.S. §§45101-48501.

cable here), a suspended police officer did not receive a written specification of the charges until more than one year after he had filed his appeal with the civil service commission. Coupled with hearings delayed fifteen and twenty-two months after the appeal filing date, and a decision rendered more than three years after that date, the untimely specification of charges prompted the Supreme Court to reverse the suspension order. The court stated:

> Because of the long delays and the looseness of the procedure that denied appellant the protection afforded by the Act of Assembly and due process, the order of the lower court is reversed and the suspension set aside.

*Id.* at 130, 252 at 706.

Similarly, in *Cerceo,* the Commonwealth Court ordered reversal where the suspended officer never received a written specification of the charges against him, despite repeated requests.

On the other hand, in *McCartney,* the suspending township responded to requests for a written specification of charges by submitting a statement of the reasons for the discharge in general language on one occasion, and turned over the suspended officer's personnel file on another. Although the court found those attempts to comply with the five-day notice rule procedurally inadequate, it ordered a remand rather than reversal.

Although we agree with the common pleas court that the adequate notice was inexcusably late, the tardiness did not cause the chief any harm which could not have been cured by a continuance. As in *McCartney,* this record does not contain "egregious delays nor a lack of any effort to comply with the proper procedure, as in Gardner or as in Cerceo, where there was never even an attempt to put any of

the charges in writing.'' 42 Pa. Commonwealth Ct. at 536, 401 A.2d at 404. Therefore, the proper remedy was to remand for a new hearing once the chief had received adequate notice and sufficient time to prepare a defense against the charges. *Donnon v. Downingtown Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 283 A.2d 92 (1971).

Accordingly, we will remand to the civil service commission of the Borough of East Pittsburgh for a full hearing on the merits.

### ORDER

Now, December 18, 1984, the order of the Court of Common Pleas of Allegheny County at No. SA 570 of 1982, dated May 23, 1983, is vacated and this case is remanded to the civil service commission of the Borough of East Pittsburgh for a full hearing on the merits.

Jurisdiction relinquished.